UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAR 0 8 2018

Abiodun Oyewole,

                        Plaintiff,

            —v—

Rita Ora, et al.,

                        Defendants.

16-cv-1912 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Abiodun Oyewole alleges copyright infringement by Defendants. Defendants

Kobalt Music Ltd. ("Kobalt Music)" and Downtown Music Publishing LLC ("Downtown

Music") move to dismiss for insufficient process and insufficient service of process. Twelve of

the other Defendants move to dismiss the complaint for failure to state a claim. For the reasons

that follow, the motions are granted.

I.      BACKGROUND

        a.  The Original Work: "When the Revolution Comes"

        Oyewole is a founding member of the spoken-word group The Last Poets. In that role,

Oyewole created the song "When the Revolution Comes" in 1968. Dkt. No. 91 (FAC) at ¶¶ 1-4.

The song, a poem warning of a coming revolution when "guns and rifles will be taking the place

of poems and essays," has a back track that consists of a drum beat and chants. Dkt No. 73, Ex.

G (Revolution Audio); Dkt. No. 73, Ex. J (Revolution Lyrics). The revolution that The Last

Poets describe has clear racial dimensions. When the revolution comes, the Poets predict,

"Black cultural centers will [be] forts supplying the revolutionaries with food and arms," and

"White death will froth the walls of museums and churches breaking the lies that enslaved our

1

mothers." Revolution Lyrics. At the end of the song, the instrumental backing stops, and together the performers chant,

> When the revolution comes afros gone be trying to straighten their heads and straightened heads gone be tryin' to wear afros
> When the revolution comes
> When the revolution comes
> When the revolution comes
> But until then you know and I know n*****s will party and bullshit and party and bullshit and party and bullshit and party and bullshit and party...
> Some might even die before the revolution comes.

Revolution Lyrics (ellipsis in original). According to Oyewole, the "sole purpose" of the lyrics is to "challenge[] and encourage[] people to NOT waste time with 'party and bullshit,' but to move towards success." FAC at ¶ 39.

Oyewole contends that he is the owner of copyright EU 188915 for the musical composition of "When the Revolution Comes." FAC at ¶ 2. However, the application for registration of copyright EU 188915 lists Douglas Music Corporation as the copyright claimant, though it lists "Abiodun Oyewole c/o Douglas Music Corp." as the author. Dkt. No. 73, Ex. D (EU 188915 Application). According to Oyewole, "Douglas Music Corporation's interest in the work of Abiodun Oyewole ceased in 1968 and all rights reverted to [Oyewole]." FAC at ¶ 5. Oyewole also states that he filed a "Notice of Copyright Use" for "When the Revolution Comes," and that in 1996, he registered copyrights for a compact disk recording of "When the Revolution Comes" and for a book that contained the lyrics of "When the Revolution Comes." FAC at ¶¶ 6, 8.

### b. The Secondary Works: "Party and Bullshit" and "Party"

In 1993, Christopher Wallace, better known as "The Notorious B.I.G." or "Biggie Smalls," released the song "Party and Bullshit." FAC at ¶¶ 12-13. The song celebrates Wallace's hip hop lifestyle. It begins with Wallace rapping, "I was a terror since the public

school era / Bathroom passes, cuttin' classes, squeezing asses / Smoking blunts was a daily routine / Since thirteen, a chubby n***a on the scene." Dkt. No. 73, Ex. K (B.I.G. Lyrics). The song continues, "Honeys want to chat / But all we wanna know is 'Where the party at?,' / And can I bring my gat?" before eventually leading into the chorus: "Dumbing out, just me and my crew / Cause all we want to do is... / Party... and bullshit, and..." B.I.G. Lyrics (ellipses in original). The chorus repeats the phrase "party... and bullshit, and..." nine times. B.I.G. Lyrics.

In 2012, Rita Ora released the pop song "How We Do (Party)," which begins, "And party and bullshit / And party and bullshit / And party and bullshit / And party, and party." Dkt. No. 62, Ex. F (Ora Lyrics). The song begins with Ora waking up and asking, "What went on last night?" Ora Lyrics. She then sings to her partner, "You look so sweet while you're dreaming (yeah) / Holding your bottle of Tanqueray (yeah) / It isn't even the weekend / Baby, that's how I know you're the one for me." Ora Lyrics. Later, Ora further describes her relationship:

> 'Cause when the sun sets baby
> On the avenue
> I get that drunk sex feeling
> Yeah, when I'm with you
> So put your arms around me, baby
> We're tearing up the town
> 'Cause that's just how we do
> We got that sweet, hot loving
> Dancing in the dark
> Out in the streets we're running
> Shut down every bar
> So put your arms around me, baby
> We're tearing up the town
> 'Cause that's just how we do.

Ora Lyrics. The song repeats the lines, "I wanna party and bullshit / And party and bullshit / And party and bullshit / And party, and party" several times throughout the song. Ora Lyrics.

According to Oyewole, the use of the phrase "party and bullshit" in "Party and Bullshit" and in "Party" was intended to "contraven[e]" the "original purpose" of the phrase as used in

3

"When the Revolution Comes," which was to discourage people from partaking in "party and bullshit." FAC at ¶ 39. Oyewole did not give Defendants permission to use the words "party and bullshit," and, given that Defendants intended to contravene the words' original purpose, they would not have received Oyewole's permission had they sought it. FAC at ¶ 39.

### c. The Instant Litigation

On March 14, 2016, Oyewole filed suit against Defendants alleging that "Party and Bullshit" and "Party" infringe on Oyewole's copyright for "When the Revolution Comes." *See* Dkt. No. 1. In response to several motions to dismiss, Oyewole filed an amended complaint on September 1, 2016. FAC.

Defendants are individuals and entities who performed, composed, produced, published, or distributed "Party and Bullshit" or "Party."[1] Oyewole claims that Defendants "publish[ed] and distribute[d]" the "crescendo, hook, text, lyrics and sound" of "When the Revolution Comes" without authorization to do so, that they used and sampled Oyewole's "sound hook and lyrics," and that they "wrongfully appropriated and exploited the punch line, performance, lyrics, poem, rhythmic line, and text." FAC at ¶¶ 35, 37, 42, 44. Specifically, Oyewole contends that "Party and Bullshit" samples "When the Revolution Comes" and remixes the refrain "party and bullshit" without authorization,[2] FAC at ¶ 13, and that "Party" "borrow[s] the refrain, punch line, crescendo, and text hook 'Party and Bullshit' coined by" Oyewole in "When the Revolution Comes," FAC at ¶ 19. Oyewole seeks to prevent any further infringement of the "copyrighted

---

[1] Oyewole also brought suit against Trevor Tahiem Smith, Jr. and Marshall Mathers for their 2014 song "Calm Down." *See* FAC at ¶ 32. Oyewole later voluntarily dismissed the claims against Mathers. Dkt. No. 113. Any remaining allegations about "Calm Down" are not the subject of the present motions.

[2] Although Oyewole initially "expressed his intentions" to stop Wallace's alleged infringement, when Wallace died, Oyewole "did not expect further infringement and, therefore, had no reason to hassle Wallace's widow or mother." FAC at ¶ 17.

coined hook rap phrase 'Party and Bullshit' by Defendants." FAC at ¶ 43.

Oyewole includes four counts in his amended complaint: (1) a claim for copyright infringement and declaratory relief; (2) a request for the creation of a constructive trust to prevent unjust enrichment by Defendants from their unauthorized use of Oyewole's copyrights; (3) a demand for an accounting of the sales and distribution of Defendants' unauthorized recordings; and (4) a request for injunctive relief. FAC at ¶¶ 41-60.

Defendants Kobalt Music and Downtown Music each filed motions to dismiss for insufficient process or insufficient service of process. Dkt. Nos. 45 & 56. Roc Nation LLC has moved to dismiss for failure to state a claim, Dkt. No. 60, as have Jobete Music Co., Inc., Notorious B.I.G. LLC, Universal Music Corp., and Songs of Universal, Inc., Dkt. No. 72. Defendants Andrew Harr, Jermaine Jackson, Trac-N-Field Entertainment LLC, Andre Davidson, Sean Davidson, Warner/Chappell Music Publishing, Inc., and Sony/ATV Music Publishing LLC joined the motions to dismiss for failure to state a claim. Dkt. Nos. 76 & 77. Defendants Roc Nation LLC and those who have joined Roc Nation's motion to dismiss are referred to herein as the "Rita Ora" Defendants; Jobete Music Co., Inc., Notorious B.I.G. LLC, Universal Music Corp., and Songs of Universal, Inc. and those who have joined their motion to dismiss are referred to as the "B.I.G. Defendants."

The Court turns first to Kobalt Music's and Downtown Music's motions.

## II.   MOTIONS TO DISMISS FOR INSUFFICIENT PROCESS OR INSUFFICIENT SERVICE OF PROCESS

On August 15, 2016, Kobalt Music filed a motion to dismiss for lack of jurisdiction due to insufficient process and insufficient service of process. Dkt. No. 45. On August 17, 2016, Downtown Music filed a similar motion. Dkt. No. 56. For the reasons below, the Court grants those motions.

### a. Procedural Background

On March 14, 2016, Oyewole filed his original complaint. Dkt. No. 1. By June 20, 2016, more than 90 days after the filing of the complaint, Oyewole had not provided evidence that he had served any of the defendants. *See* Dkt. No. 4. The Court thus required Oyewole to serve the defendants and file proof of service no later than July 11, 2016. Dkt. No. 4. The Court warned Oyewole that the failure to serve defendants on or before July 11, 2016, would result in dismissal of the action. Dkt. No. 4.

In a letter dated July 13, 2016, Oyewole informed the Court that due to a miscommunication, the process server had delayed service, but the letter stated that as many defendants as possible were served on or before July 11, 2016. Dkt. No. 21. Oyewole warned, though, that there might be a delay in filing proof of service for some defendants. Dkt. No. 21. On July 15, 2016, the Court extended the deadline to file proof of service to July 22, 2016, and stated that "[n]o additional extensions [would] be granted." Dkt. No. 22.

On July 11, 2016, Oyewole filed purported proofs of service on, inter alia, Kobalt Music, Dkt. No. 7, and Downtown Music, Dkt. No. 10.

The proof of service on Kobalt Music consists of an affidavit in which the server swears that he served Zach Ayer at 220 West 42nd Street, 11th Floor, New York, NY 10036. Dkt. No. 7. The affidavit states that Ayer "is a member of the legal department at Kobalt Music, authorized to accept service on behalf of Kobalt Music." Dkt. No. 7.

The proof of service on Downtown Music consists of an affidavit in which the sever swears that he served Molly Martin on July 8, 2016. Dkt. No. 10. The affidavit indicates that Martin is designated by law to accept service on behalf of Downtown Music. Dkt. No. 10.

Kobalt Music and Downtown Music have moved to dismiss the claims against them

under Rules 12(b)(4) and (5) for insufficient process and/or insufficient service of process. *See* Dkt. Nos. 45 & 56.

Kobalt Music and Downtown Music argue that the claims should be dismissed under Rule 12(b)(5) because they were never actually served. According to Kobalt Music, Zach Ayer worked at Kobalt Music Publishing America, Inc., which is a different entity from Kobalt Music Publishing Ltd., the defendant in this action. Dkt. No. 49 (Kobalt Memo) at 3-4; *see also* Dkt. No. 47 (Arnay Dec.) at ¶ 2 ("The office located at 220 West 42nd Street, 11th Floor, New York, New York is the place of business of Kobalt Music Publishing America, Inc.," not of Defendant Kobalt Music Publishing Ltd., "an English entity which does not maintain an office in the City of New York."). Kobalt Music asserts that, in any event, Ayer had no managerial or supervisory authority and was not authorized to accept service of process for either company. Kobalt Memo at 3-4; *see also* Dkt. No. 46 (Ayer Dec.) at ¶¶ 2, 4 (Ayer stating that (1) he never told the process server that he was authorized to accept service on behalf of Kobalt Music, and (2) he is not in fact authorized to accept service on behalf of Kobalt Music); Arnay Dec. at ¶¶ 3-4 (General Counsel of Kobalt Music Publishing America, Inc. stating that Ayer has never been authorized to accept service on behalf of Kobalt Music). Similarly, Downtown Music states that Molly Martin was working as a receptionist at the time that service was allegedly effectuated, that she is not a member of Downtown Music's legal department, and that she has never been authorized to accept service on behalf of Downtown Music. Dkt No. 59 (Downtown Memo) at 3-5; Dkt. No. 58 (Bergman Dec.) at ¶¶ 2-4. Martin has submitted a declaration to the same effect, and she swears that she never told the process server that she was authorized to accept service on behalf of Downtown Music. Dkt. No. 57 (Martin Dec.) at ¶¶ 2-4.

Both defendants also argue that the claims should be dismissed under Rule 12(b)(4)

7

because the summons did not include all of the items required by Federal Rule of Civil Procedure 4. Kobalt Memo at 2; Downtown Memo at 2. Specifically, the defendants assert that the summons did not contain the name of the court, list all of the parties, state the name and address of the plaintiff's attorney, contain a signature from clerk of the court, or bear the court's seal. Kobalt Memo at 2; Downtown Memo at 2.

Because the Court concludes that service on Ayer and Martin did not constitute sufficient service of process on Kobalt Music or Downtown Music, it does not consider the arguments that the process was insufficient.

### b. Discussion

In deciding a Rule 12(b)(5) motion, a court must look to Rule 4, which governs the content, issuance, and service of a summons. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Federal Rule of Civil Procedure 4 provides that service of process on a corporation may be completed "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a corporation may be served in the same manner allowed by the state in which the district court is located or service is made—here, New York. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

Under New York law, a corporation may be served through an "officer, director, managing or general agent, or cashier or assistant cashier or . . . any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. 311(a)(1). Additionally, service may be made on the secretary of state as agent of a corporation. *See id.*; N.Y. Bus. Corp. Law § 306. New York law also provides that service on a limited liability company may be effectuated by serving a member of the company, if the company is member-managed; a manager of the

company, if the company is manager-managed; an agent authorized by appointment to receive process; or someone designated by the company to receive process. N.Y. C.P.L.R. 311-a(a).

When a defendant moves to dismiss under Rule 12(b)(5) for insufficient service of process, the plaintiff bears the burden of proving adequate service. *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

Kobalt Music has provided sworn declarations stating that Zach Ayer was not authorized to accept service on behalf of Kobalt Music and never told the process server that he was. Ayer Dec. at ¶¶ 2, 4; Arnay Dec. at ¶¶ 3-4. Indeed, in their declarations, Ayer and the General Counsel of Kobalt Music Publishing America, Inc. state that Ayer did not work for—and had no affiliation with—Kobalt Music at all. Ayer Dec. at ¶ 4; Arnay Dec. at ¶ 4. Oyewole has not provided any evidence to rebut those statements. Accordingly, Oyewole has not shown that he effected sufficient service of process on Kobalt Music.

Likewise, Downtown Music has provided evidence that (1) Molly Martin never told the process server that she was authorized to accept service on behalf of Downtown Music, and (2) Martin is not an officer or director of Downtown Music, has no managerial or supervisory authority, and has never been authorized to accept service on behalf of Downtown Music. Martin Dec. at ¶¶ 2-3; Bergman Dec. at ¶¶ 2-3. In response, Oyewole suggests that Martin was in fact authorized to accept service, or at least indicated to the process server that she was. Dkt. No. 107 at ¶¶ 7-8. However, Oyewole has offered no evidence to support this claim.[3] Oyewole

---

[3] Oyewole contends that Martin was actually served twice and argues that it is "quite difficult to believe" that she told two separate process servers that she was not authorized to accept service. Dkt. No. 107 at ¶ 7; *see also* Dkt. No. 107, Ex. B (process server swearing that Martin was also served on July 11, 2016). However, Oyewole did not electronically file proof of service of process for the alleged second service on or before July 22, 2016, as the Court required. In any event, even if the Court considers the second service, Oyewole has not shown that Martin was authorized—or indicated that she was authorized—to accept service on behalf of Downtown

has thus failed to demonstrate that service of process on Downtown Music was sufficient.

In response to Kobalt Music's and Downtown Music's motions, Oyewole emphasizes that he had difficulty with the service company he hired, that he should not be penalized for their mistakes, and that the Court should allow him to perfect service, if necessary.[4] *See* Dkt. No. 80 (Opp. to Kobalt) at 5-8.

Pursuant to Federal Rule of Civil Procedure 4(m), a court shall extend the time to serve a defendant if good cause is shown, and a court may do so in the absence of good cause. A "delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000)). When deciding whether to grant extensions of time in the absence of good cause, courts consider "the relative prejudice to the parties . . . and whether there is a justifiable excuse for the failure properly to serve." *Id.* (quoting *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015)).

Here, good cause for Oyewole's failure to serve Kobalt Music and Downtown Music does not exist. Although Oyewole complains of his process server's negligence, Opp. to Kobalt at 6, he has not demonstrated that he actively monitored the server's performance. Indeed, Oyewole submitted a letter dated July 13, 2016, stating that Oyewole's counsel contacted the process service company *after* the Court issued its June 20, 2016 Order and only at that point "ascertain[ed] the status of service." Dkt. No. 21.

---

Music. Accordingly, Oyewole has failed to meet his burden to show adequate service.

[4] In response to Downtown Music's motion to dismiss, Oyewole submitted a declaration from his counsel, *see* Dkt. No. 107, but no opposition brief. To the extent that arguments in his brief in opposition to Kobalt Music's motion, *see* Dkt. No. 80, apply in equal force to Downtown Music's motion, the Court considers them for both motions.

In addition, the Court declines to grant a discretionary extension of the time period to serve Kobalt Music and Downtown Music. Oyewole failed to serve any defendants within the time period required by Rule 4(m) and then, when given another opportunity to effect service, again failed to timely serve Kobalt Music and Downtown Music. When the Court extended the deadline for service, the Court cautioned Oyewole that failure to serve Defendants in that time period would result in dismissal. Dkt. No. 4. And when the Court gave Oyewole an additional 11 days to file proofs of service, it made clear that no further extensions would be granted. Dkt. No. 22. Accordingly, the Court finds it appropriate to dismiss the claims against Kobalt Music and Downtown Music as a result of Oyewole's failure to effect sufficient service of process.

Furthermore, there is no evidence that Defendants Kelly Sheehan, Berry Gordy, Jr., Osten Harvey, Jr., Bee Moe Easy Music, EMI Music Publishing, Justin Combs Company, or Stone Diamond Music Corp. have yet been served. For the same reasons, the Court declines to provide Oyewole more time to serve those defendants and thus also dismisses the claims against them.

## III.     MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

The B.I.G. and Rita Ora Defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6).

### a.  12(b)(6) Standard

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir.2007). To survive a motion to dismiss, the plaintiff's pleading must contain allegations that, accepted as true, "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding a motion to dismiss, the Court may consider the allegations of the pleading itself, as well as documents attached as exhibits or incorporated by reference. *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir.2008). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559(LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (citing *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)). "In copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them,' including 'any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal citation omitted) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986), and 3–12 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 14–01[B] (2012) § 12.10).

### b. Count I: Copyright Infringement

"To establish a prima facie case of copyright infringement, a plaintiff must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Warner Bros. Entm't, Inc. v. RDR Books*, 575 F. Supp. 2d 513, 533 (S.D.N.Y. 2008) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). To satisfy the second element, a plaintiff must show that: "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am., Inc. v. GFI*, 193 F.3d

92, 99 (2d Cir. 1999) (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).

Defendants make several arguments why Oyewole's complaint should be dismissed for failure to state a claim of copyright infringement. The Rita Ora Defendants primarily contend that (1) no substantial similarity exists between "Party" and "When the Revolution Comes"; (2) the phrase "party and bullshit" does not constitute a protectable expression; and (3) the use of "party and bullshit" in "Party" constitutes fair use. *See* Dkt. No. 61 (Ora Memo) at 7-21. Similarly, the B.I.G. Defendants assert that (1) Plaintiff lacks a valid ownership interest in the musical composition or sound recording for "When the Revolution Comes"; (2) "party and bullshit" is not a protectable expression; (3) "Party and Bullshit" and "When the Revolution Comes" are not substantially similar; (4) "Party and Bullshit's" use of the phrase "party and bullshit" constitutes fair use; and (5) the statute of limitations bars or partially bars Oyewole's copyright infringement claim. *See* Dkt. No. 78 (B.I.G. Memo) at 6-21. They also contend that counts two and three should be dismissed because Oyewole and the B.I.G. Defendants had no confidential or fiduciary relationship, and that count four should be dismissed because it is a remedy not a cause of action. B.I.G. Memo at 22-23.

The Court assumes arguendo that Oyewole has sufficiently alleged an ownership interest in "When the Revolution Comes," that the phrase "party and bullshit" is a protectable expression, and that the works at issue are substantially similar. The Court thus proceeds to consider whether the fair use doctrine applies to Defendants' works.

Federal law provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use),

13

scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether the use of a work is fair, courts consider several factors, including—

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The "ultimate test of fair use . . . is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts' . . . would be better served by allowing the use than by preventing it." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998)). The fair use doctrine is intended to protect secondary works that "add[] value to the original," that use the original work "as raw material, transformed in creation of new information, new aesthetics, new insights and understandings." *Castle Rock,* 150 F.3d at 142.

The fair use doctrine is an affirmative defense and, accordingly, the party asserting it bears the burden of proving it. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015).

### 1. First Factor: Purpose and Character of the Use

Pursuant to the first factor, courts consider whether the allegedly infringing work "supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message [,] . . . in other words, whether and to what extent the new work is transformative." *Cariou*, 714 F.3d at 705 (alterations in original) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). This factor is "[t]he heart of the fair use inquiry." *Blanch v. Koons,* 467 F.3d 244, 251 (2d Cir. 2006). Indeed, "the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works." *Campbell*, 510 U.S. at 579.

In analyzing the transformative nature of the works at issue, courts "examine how the []works may 'reasonably be perceived.'" *Cariou*, 714 F.3d at 707 (quoting *Campbell*, 510 U.S. at 582). "[A] secondary work may constitute a fair use even if it serves some purpose other than those (criticism, comment, news reporting, teaching, scholarship, and research) identified in the preamble to the statute." *Id.* at 706. There is no requirement "that a work comment on the original or its author in order to be considered transformative." *Id.* Instead, "the critical inquiry is whether the new work uses the copyrighted material itself for a purpose, or imbues it with a character, different from that for which it was created." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 179 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2175 (2017). Thus secondary works are transformative when the original works are "serene and deliberately composed" black-and-white photographs while the secondary works are "collages . . . that incorporate color, feature distorted human and other forms and settings," and are much larger than the originals, because the secondary works "manifest an entirely different aesthetic" from the originals. *Cariou*, 714 F.3d at 706. On the other hand, the Second Circuit has held that a play's use of the copyrighted "Who's on First" routine was not transformative when the defendant had argued that the allegedly infringing work transformed the purpose of the routine from comedic to dramatic, but the routine was unnecessary to serve the claimed dramatic purpose—advancing the plot of the play. *TCA Television Corp.*, 839 F.3d at 182. The court further explained that although the play itself "convey[ed] a dark critique of society," the play did not transform the routine "so that *it* convey[ed] that message." *Id.* at 181.

As part of the first factor, courts also consider whether the allegedly infringing work has a commercial or nonprofit educational purpose. A commercial purpose pushes towards a conclusion that the work at issue did not use the original work fairly, but "Congress 'could not

have intended' a rule that commercial uses are presumptively unfair." *Cariou*, 714 F.3d at 708 (quoting *Campbell*, 510 U.S. at 584).

Here, both "Party and Bullshit" and "Party" transform the purpose of the phrase "party and bullshit" from one of condemnation to one of glorification. Unlike the routine in *TCA Television Corp.*, the phrase "party and bullshit" is itself transformed; in neither secondary work does it evince criticism or foreboding.

"When the Revolution Comes" is a political song that warns of an approaching violent revolution. Revolution Lyrics. The Last Poets want their listeners to prepare for the revolution, appreciate its gravity, and commit themselves to it; they explain that only things of substance will survive the revolution. *See* Revolution Lyrics ("When the revolution comes/ Transit cops will be crushed by the trains after losing their guns and blood will run through the streets of Harlem drowning anything without substance"); ("The cost of revolution is 360 degrees understand the cycle that never ends . . . Speak not of revolution until you are willing to eat rats to survive."). At the end of the song, the Poets criticize those who "will party and bullshit" until the revolution comes, and they suggest that, as a result of the partying and bullshit, "[s]ome might even die before the revolution comes." Revolution Lyrics. In "When the Revolution Comes," therefore, the phrase "party and bullshit" is part of an admonishment, an expression of disgust and disappointment in those who are not readying themselves for the revolution.

By contrast, "Party and Bullshit" embraces the "party and bullshit" culture, thereby transforming "party and bullshit" from something shunned to something glorified. The song begins with Wallace rapping, "I was a terror since the public school era / Bathroom passes, cuttin' classes, squeezing asses / Smoking blunts was a daily routine / Since thirteen, a chubby n***a on the scene." B.I.G. Lyrics. As the song goes on, it becomes clear that Wallace

continues to enjoy a dissolute lifestyle. For example, Wallace later raps, "Honeys want to chat / But all we wanna know is 'Where the party at?' / And can I bring my gat?" B.I.G. Lyrics. He continues, "Dumbing out, just me and my crew / Cause all we want to do is… / Party… and bullshit." B.I.G. Lyrics (ellipses in original). In "Party and Bullshit," then, "party and bullshit" is a desired activity, part of Wallace's hip hop lifestyle, which the song celebrates.

Likewise, "Party" exalts "party and bullshit" rather than condemning it. Ora sings with joy about "party and bullshit." She explains that her partner is "the one for [her]" because s/he is "[h]olding a bottle of Tanqueray" when "[i]t isn't even the weekend," and she sings about "[s]hut[ting] down every bar" and "tearing up the town." Ora Lyrics. Ora cheerfully proclaims that she wants to "party and bullshit." Ora Lyrics. Unlike "When the Revolution Comes," "Party" does not denounce "party and bullshit" but instead suggests that it is fun, lighthearted, and enjoyable.

Moreover, in addition to the songs themselves, the complaint supports the conclusion that "Party and Bullshit" and "Party" are transformative. Indeed, Oyewole acknowledges that the B.I.G. and Rita Ora Defendants use the phrase "party and bullshit" "in contravention" of Oyewole's original purpose, which was to "encourage[e] people to NOT waste time with 'party and bullshit.'" FAC at ¶ 39. Thus even Oyewole recognizes that Defendants' songs change the meaning and purpose of the phrase "party and bullshit."

A comparison of the works at issue, along with Oyewole's own statement regarding his use of the phrase "party and bullshit," reveals that the B.I.G. and Rita Ora Defendants' works transform "When the Revolution Comes," "imbu[ing] it with a character, different from that for which it was created." *TCA Television Corp.*, 839 F.3d at 180. Although "Party and Bullshit" and "Party" clearly have a commercial purpose, that alone does not suggest that the B.I.G. and

Rita Ora Defendants unfairly used Oyewole's work. *See Cariou*, 714 F.3d at 708. Accordingly, the first factor strongly supports a conclusion that "Party and Bullshit" and "Party" are protected by the fair use doctrine.

### 2. *Second Factor: Nature of the Copyrighted Work*

The second factor, the nature of the copyrighted work, asks "(1) whether the work is expressive or creative, . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006)).

"When the Revolution Comes" is creative, which weighs against a determination that Defendants' works constitute fair use, but it is also published, a fact that favors the B.I.G. and Rita Ora Defendants. *See Blanch*, 467 F.3d at 256-57.

### 3. *Third Factor: Amount and Substantiality of the Portion Used*

In analyzing the third factor, courts consider "whether the quantity and value of the materials used[ ] are reasonable in relation to the purpose of the copying." *Blanch,* 467 F.3d at 257 (quoting *Campbell*, 510 U.S. at 586). Courts look to the quantity of materials used as well as "'their quality and importance' to the original work." *Cariou*, 714 F.3d at 710 (quoting *Campbell*, 510 U.S. at 587). "[T]he law does not require that the secondary artist may take no more than is necessary." *Id.*

"Party and Bullshit" and "Party" each use one phrase from "When the Revolution Comes." The Last Poets repeat the expression "party and bullshit" approximately four times at the end of their song, but they do not use it anywhere else. Moreover, although the background track's cutting out when the Last Poets chant "party and bullshit" adds a level of gravity and

importance to the phrase, the expression is not critically important to the song's message. Instead, the song focuses on the upcoming revolution, describing what will happen and repeating "when the revolution comes." The criticism of those who "party and bullshit" reinforces The Last Poets' message that their listeners should prepare for and commit to the revolution, but it is not essential to that message.

### 4. Fourth Factor: Effect of the Use on the Market for the Copyrighted Work

The concern animating the fourth factor "is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work." *Blanch,* 467 F.3d at 258 (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 481-82 (2d Cir. 2004)). "[A]n accused infringer has usurped the market for copyrighted works, including the derivative market, where the infringer's target audience and the nature of the infringing content is the same as the original." *Cariou*, 714 F.3d at 709. Indeed, "[a] fair use must not excessively damage the market for the original by providing the public with a substitute for that original work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014). "The more transformative the secondary use, the less likelihood that the secondary use substitutes for the original." *Castle Rock*, 150 F.3d at 145.

Defendants' songs are unlikely to "usurp" the market for "When the Revolution Comes." Because, as explained, the allegedly infringing works are different in character and purpose from the original work, it is unlikely that Defendants' target audience and The Last Poets' audience are the same. Even if they are, Defendants' works are significantly different from Oyewole's and thus do not "provid[e] the public with a substitute for ['When the Revolution Comes']." *Authors Guild, Inc.*, 755 F.3d at 95.

On balance, the factors weigh in favor of a conclusion that "Party and Bullshit" and "Party" are fair uses of "When the Revolution Comes." Accordingly, the B.I.G. and Rita Ora Defendants' motions to dismiss the copyright infringement claim are granted.

### c. Counts II – IV

The remaining counts in the amended complaint rely on the theory that Defendants infringed Oyewole's copyright: Oyewole seeks a constructive trust to "prevent[] unjust enrichment by the Defendants for the unauthorized use of [Oyewole's] copyrights," FAC at ¶ 49; an accounting of Defendants' sales of their works to determine the amount owed to Oyewole, FAC at ¶¶ 51-55; and an injunction to prevent Defendants from "wrongfully misappropriat[ing] and exert[ing] dominion and control over Plaintiff's interests in the income derived from 'When the Revolution Comes,'" FAC at ¶ 59.

Although styled as counts in the complaint, the remaining "counts" are in fact remedies for the alleged copyright infringement. Because Oyewole has failed to state a claim of copyright infringement against the B.I.G. and Rita Ora Defendants, he is not entitled to any remedy against them on that basis. Accordingly, Oyewole's remaining claims against the B.I.G. and Rita Ora Defendants necessarily also fail.[5]

## IV. CONCLUSION

Kobalt Music's, Downtown Music's, and the B.I.G. and Rita Ora Defendants' motions to dismiss are granted. Accordingly, the claims against Kobalt Music, Downtown Music, Roc Nation LLC, Jobete Music Co., Inc., Notorious B.I.G. LLC, Universal Music Corp., Songs of Universal, Inc., Andrew Harr, Jermaine Jackson, Trac-N-Field Entertainment LLC, Andre Davidson, Sean Davidson, Warner/Chappell Music Publishing, Inc., and Sony/ATV Music

---

[5] The Court also notes that Oyewole failed to oppose the B.I.G. Defendants' request to dismiss Counts Two through Four. *See* Dkt. No. 123 (B.I.G. Reply) at 1 n.4.

Publishing LLC are dismissed. In addition, because they have not yet been served, the claims against Kelly Sheehan, Berry Gordy, Jr., Osten Harvey, Jr., Bee Moe Easy Music, Emi Music Publishing, Justin Combs Company, and Stone Diamond Music Corp. are also dismissed. According to the docket, Defendants Rita Ora and Trevor Tahiem Smith, Jr. have each been served, *see* Dkt. Nos. 14 & 15, but they have not appeared or filed any documents in this case. Within 14 days of the date of this Order, Oyewole shall either request an entry of default or dismiss the claims against the two remaining Defendants.

      SO ORDERED.

Dated: _____, 2018
       New York, New York

                                   _____
                                    ALISON J. NATHAN
                            United States District Judge